**COLIN M. RUBICH**
**MICHAEL KAKUK**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 Second Ave. N., Ste. 3200**
**Billings, MT 59101**
**Phone: (406) 247-4684**
**Fax: (406) 657-6989**
**E-mail: Colin.Rubich@usdoj.gov**

**AMANDA R. VAUGHN**
**Trial Attorney**
**Fraud Section, U.S. Department of Justice**
**1400 New York Ave. NW**
**Washington, D.C. 20530**
**Phone: (202) 616-4530**
**Fax: (202) 514-0152**
**E-mail: Amanda.Vaughn@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 20- \03-BLG- DLC** |
| **Plaintiff,** | **INDICTMENT** |
| **vs.** | **WIRE FRAUD** |
| **MATTHEW JASON WELCH,** | **(Counts I-II)** **Title 18 U.S.C. § 1343** **(Penalty: 20 years imprisonment, $250,000 fine, and three years supervised release)** |
| **Defendant.** | |

1

THE GRAND JURY CHARGES:

## COUNTS I-II

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### *The Defendant*

1.      The defendant, MATTHEW JASON WELCH, was a resident of Laurel, Montana, in the District of Montana.

2.      WELCH purported to operate a sole proprietorship in his name that provided construction services (the "Welch Sole Proprietorship").

3.      On or about November 12, 2019, WELCH was charged by a criminal information in the Twenty-Second Judicial District of Montana, in Stillwater County, Montana, with three counts of Deceptive Practices for Financial Gain, a felony under Montana state law.

4.      On or about January 9, 2020, WELCH appeared for arraignment on the criminal information and pled not guilty.

### *The Small Business Administration*

5.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to

2

entrepreneurs and small businesses.   The mission of the SBA was to maintain and

strengthen the nation's economy by enabling the establishment and viability of

small businesses and by assisting in the economic recovery of communities after

disasters.

6.     As part of this effort, the SBA enabled and provided for loans through

banks, credit unions, and other lenders.   These loans had government-backed

guarantees.

### *The Paycheck Protection Program*

7.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act

was a federal law enacted in or around March 2020 and designed to provide

emergency financial assistance to the millions of Americans who were suffering

the economic effects caused by the COVID-19 pandemic.   One source of relief

provided by the CARES Act was the authorization of forgivable loans to small

businesses for job retention and certain other expenses, through a program referred

to as the Paycheck Protection Program ("PPP").

8.     In order to obtain a PPP loan, a qualifying business was required to

submit a PPP loan application, which was signed by an authorized representative

of the business.   The PPP loan application required the business (through its

authorized representative) to acknowledge the program rules and make certain

3

affirmative certifications in order to be eligible to obtain the PPP loan.    In the PPP

loan application, the small business (through its authorized representative) had to

state, among other things, its: (a) average monthly payroll expenses; and (b)

number of employees.    These figures were used to calculate the amount of money

the small business was eligible to receive under the PPP.    In addition, businesses

applying for a PPP loan had to provide documentation showing their payroll

expenses.

9.    A business applying for a PPP loan had to certify (through its

authorized representative) that no individual owning 20 percent or more of the

equity of the business was subject to an indictment, criminal information, or other

means by which formal criminal charges are brought in any jurisdiction.    The

authorized representative submitting the application had to initial next to the

answer provided.    Businesses with owners meeting the equity threshold who had

pending criminal charges were ineligible for a PPP loan.

10.    A PPP loan application had to be processed by a participating

financial institution (the "lender").    If a PPP loan application was approved, the

lender funded the PPP loan using its own monies, which were 100% guaranteed by

the SBA.    Data from the application, including information about the borrower,

the total amount of the loan, and the listed number of employees, was transmitted

4

by the lender to the SBA in the course of processing the loan.

11.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

### *Relevant Financial Institution and Related Entities*

12.     Financial Institution 1 was a Federal Deposit Insurance Corporation-insured financial institution headquartered in Salt Lake City, Utah.   Financial Institution 1 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

13.     Company 1 was a commercial real-estate lender with offices in Pennsylvania, Michigan, and California.   Company 1 participated in the SBA's PPP as a lender and as an agent for other lenders, such as Financial Institution 1. When Company 1 served as an agent for other lenders, Company 1 would review the loan applications.   If a loan application received by Company 1 was approved for funding, a partner financial institution, such as Financial Institution 1, disbursed the loan funds to the applicant.

14.     Company 2 was a privately held company specializing in small-business loans and financing with offices in Michigan, New York, and Arizona. Company 2 participated in the SBA's PPP by acting as a service provider between small businesses and certain PPP lenders, including Financial Institution 1 and Company 1.   Small businesses seeking PPP loans could apply through Company 2.   Company 2 would pass the application package to a partner lender, such as Company 1 and Financial Institution 1.

## THE SCHEME TO DEFRAUD

15.     Beginning in or around April 2020 and continuing thereafter until in or around May 2020, in the State and District of Montana, and elsewhere, the defendant, MATTHEW JASON WELCH, devised and intended to devise a scheme and artifice to defraud Financial Institution 1, Company 1, Company 2, and the SBA and to obtain money and property by false and fraudulent pretenses, representations, and promises, said scheme being more specifically described below, and thereafter to execute the scheme and artifice so devised, transmitted, and caused to be transmitted by wire communication in interstate commerce certain signals, writings, and sounds.

## PURPOSE OF THE SCHEME TO DEFRAUD

16.     The purpose of the scheme to defraud was for WELCH to unjustly

enrich himself by obtaining PPP loan proceeds under false and misleading

pretenses, including by making false statements about his criminal history, and to

use the PPP loan proceeds to pay for restitution and other costs related to pending

criminal cases against WELCH in the Twenty-Second Judicial District of Montana

and elsewhere.

MANNER AND MEANS

17.     It was part of the scheme to defraud that, on or about April 23, 2020,

WELCH submitted a false and misleading PPP loan application to Company 2 in

the name of the Welch Sole Proprietorship seeking approximately $35,000 in PPP

funds (the "PPP Application") to support payroll, lease and mortgage-interest

costs, and utility costs.    The PPP Application identified WELCH as the 100

percent owner of the Welch Sole Proprietorship and was signed by WELCH.

18.     In the PPP Application, WELCH falsely certified that he was not

"subject to an indictment, criminal information, arraignment, or other means by

which formal criminal charges are brought in any jurisdiction."    In fact, at the

time that WELCH made this certification, he was subject to a criminal information

in the Twenty-Second Judicial District of Montana.

19.     In was further part of the scheme to defraud that on or about May 4,

2020 and on or about May 12, 2020, WELCH provided additional documentation,

7

including purported tax documents related to the Welch Sole Proprietorship's business, as requested by Company 2, to support his claim for PPP funds without disclosing his criminal history.

20.     It was further part of the scheme to defraud that WELCH regularly called and emailed representatives of Financial Institution 1, Company 1, Company 2, and the SBA asserting that he was entitled to and eligible to receive the PPP loan funds for which he submitted the PPP Application.

21.     In furtherance of the scheme to defraud, on or about May 14, 2020, in a phone call with a law-enforcement agent posing as a representative of Company 1, WELCH falsely stated that he did not have any criminal charges pending against him as of the date of the PPP Application.

22.     It was also part of the scheme to defraud that WELCH did not disclose to the SBA, Company 1, Company 2, or Financial Institution 1 that WELCH planned to use the PPP loan funds to pay for restitution and other costs associated with criminal charges WELCH faced in the Twenty-Second Judicial District of Montana and elsewhere.

INTERSTATE WIRING

COUNT I

On or about April 23, 2020, in the State and District of Montana, the

8

defendant, MATTHEW JASON WELCH, for the purpose of executing the scheme described above, did knowingly cause to be transmitted in interstate commerce, by means of wire communications, an electronic transmission between Montana and Company 2's servers outside of Montana, that is, WELCH's submission of the PPP Application, all in violation of 18 U.S.C. § 1343.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

9

COUNT II

On or about May 12, 2020, in the State and District of Montana, the

defendant, MATTHEW JASON WELCH, for the purpose of executing the scheme

described above, did knowingly cause to be transmitted in interstate commerce, by

means of wire communications, an electronic transmission between Montana and

Company 2's servers outside of Montana, that is, WELCH's submission of

additional documentation to support the PPP Application, all in violation of 18

U.S.C. § 1343.

      A TRUE BILL.

Foreperson signature redacted.  Original document filed under seal.

_____
FOREPERSON

_____
KURT G. ALME
United States Attorney

_____
JOSEPH E. THAGGARD
Criminal Chief Assistant U.S. Attorney

Crim. Summons _____

Warrant: _____

Bail: _____

10